COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

David J. LAWLER, Respondent.

No. 83–1028.

Supreme Court of Iowa.

Jan. 18, 1984.

Frank A. Comito, George H. Capps and Hedo M. Zacherle, Des Moines, for complainant.

David J. Lawler, Fort Dodge, pro se.

McGIVERIN, Justice.

The ultimate question here involves what action is appropriate upon our de novo review of the report of our Grievance Commission in this attorney disciplinary proceeding involving respondent David J. Lawler. We suspend his license to practice law indefinitely with no possibility of reinstatement for three years from the date of this decision.

Respondent is an attorney licensed to practice law in Iowa. He maintains an office in Fort Dodge.

Two complaints in several counts were filed by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association against respondent before our Grievance Commission. The record of the hearing before the Commission contained the complaints, the Committee's requests for admissions, and respondent's answers thereto, as well as the testimony of witnesses and other evidence.

Respondent admitted several of the factual claims and allegations of statutory and ethical violations made against him by the Committee. However, in his answers to the requests for admission, he denied the substance of other allegations in the complaints.

He filed a notice of appeal from the report of the Commission, which recommended that respondent be suspended from the practice of law for four years. He then filed in this court a designation of record and statement of issues for review. The latter contended that the Commission erred in finding he violated ethical considerations (EC) and disciplinary rules (DR). However,

respondent filed nothing further. The Committee, therefore, moved to dismiss the appeal pursuant to Iowa R.App.P. 13(f) due to respondent's failure to timely file his brief. Accordingly, the motion to dismiss the appeal is sustained.

With the case in this posture, the matter now stands for final disposition by this court pursuant to Iowa Court Rules 118.-10–.11. We must review de novo the report of the Commission and take appropriate action thereon.

"The Committee has the burden of proof to establish by a convincing preponderance of the evidence that respondent has violated the code of professional responsibility as charged. This burden amounts to less than is required in a criminal prosecution, but is greater than is required in a civil suit." *Committee on Professional Ethics v. Brodsky,* 318 N.W.2d 180, 182 (Iowa 1982). *See also Committee on Professional Ethics v. Thompson,* 328 N.W.2d 520, 521 (Iowa 1983). Pursuant to rules 118.10–.11, we determine anew the appropriate discipline, if any, to be imposed. The Grievance Commission found that one count against respondent had not been established. We consider on this review only the following matters in which the Commission found that a breach of professional conduct had been established.

From the record the Commission found, as do we on our de novo review, the following facts concerning the two complaints.

I. *The Ronald D. Hay complaint.* The first complaint consisted of four counts. Count I alleged that respondent participated in a fee splitting arrangement with a legal assistant employed by him. The Commission found:

> During 1980, the Respondent employed Jack D. Johnson, a former inmate of the Iowa Men's Reformatory, as a legal assistant and investigator. Johnson had formerly been a legal assistant at the men's reformatory. The Respondent agreed to use the services of Johnson, and Johnson agreed to refer his former

inmate clients to Respondent for legal representation.

In November of 1980, Johnson referred an inmate of the reformatory, Ronald D. Hay, to Respondent and Respondent agreed to represent Hay and to pursue a post conviction relief matter on his behalf. Respondent was advised by Johnson, before he accepted the case, that Hay had recently received a sizable inheritance.

The Respondent required his client, Hay, to pay him an initial retainer of $1500.00 and to pay Johnson $500.00 as an initial retainer as a part of his initial agreement to represent him. Hay was to pay $60.00 per hour for the services of Respondent and $25.00 per hour for the services of Johnson.

While still an inmate in the reformatory, Johnson had prepared an application for postconviction relief for Hay. The application had been filed with the court and was pending when Johnson referred Hay to Lawler.

Respondent and Johnson shared office space. Johnson did not receive a salary or hourly pay from respondent and the costs of Johnson's services were not included in respondent's overhead.

EC 3–8 provides in relevant part:

Since a lawyer should not aid or encourage a layman to practice law, he should not practice law in association with a layman or otherwise share legal fees with a layman.

The fee agreement was between Hay, the client, and respondent but it contained an improper provision for division of the fee paid between respondent and Johnson.

A rationale advanced for the prohibition against sharing fees with laypersons, beyond the obvious observation that fee splitting encourages laypersons to practice law, has been stated as follows:

[T]he underlying purpose of regulating the practice of law is not so much to protect the public from having to pay fees to unqualified legal advisors as it is to protect the public against the often drastic and farreaching consequences of their inexpert legal advice.

*In Re Baker*, 8 N.J. 321, 339, 85 A.2d 505, 514 (1951).

The net result here was an incentive for Johnson to engage in the unauthorized practice of law under the agreement which provided for splitting of fees from the client between Johnson and respondent.

Count II alleged that respondent neglected a legal matter entrusted to him by his client, Hay, and obtained fees from his client for unaccomplished work. Respondent was to handle and pursue a postconviction relief action on behalf of Hay. The evidence showed and the Commission found:

The Respondent did not file any proceedings on behalf of Hay. He did bill Hay an additional $668.00 for his services and $482.40 for Johnson's services. Twelve hours of Respondent's billing was for research. Respondent could provide no substantial evidence of such research. Respondent also billed for a trip to Des Moines to meet with Patricia Hulting, prisoner liaison with the Attorney General's office.

Ms. Hulting, in her testimony, denied ever meeting the Respondent. Respondent also charged $120.00 for long distance calls with Hay but could produce no records to substantiate the charge.

Other charges were made for factual investigation and an additional trip to Des Moines by Respondent and $982.40 for a four day trip to Vinton by Johnson to interview witnesses. Respondent failed to introduce any work notes, records or reports from Johnson to substantiate any of these charges.

The record shows neglect and inaction by respondent on the Hay case even though a substantial retainer fee had already been collected. Then the client was additionally billed for unsubstantiated alleged services.

Count III charged, and the Commission found, that respondent failed to adequately supervise the work of his legal assistant, Johnson. In fact, the record fairly implies that respondent furnished no supervision

over Johnson's activities after Johnson initially referred Hay as a client to respondent. The record also shows that Johnson has since been returned to prison.

Count IV alleged that respondent attempted to monitor and handle financial transactions between his client, Hay, and the client's bank. Respondent was not successful in this attempt. We are not satisfied, however, that the Committee has established this count by a convincing preponderance of the evidence, and, we, therefore, do not consider it further.

Hay terminated respondent's legal representation in April 1981. Hay had been respondent's client for approximately five months.

The Grievance Commission found, as do we, that respondent violated a number of professional canons and statutes as to this complaint, including Iowa Code section 610.24(3)–(4), EC 3–8, DR 3–102(A), and DR 1–102(A)(1), as to Count I; EC 3–6(2), EC 6–4, DR 1–102(A)(1) & (4), DR 6–101(A)(3) and DR 7–101(A)(2) & (3) as to Count II; and EC 3–4, EC 3–6(2), EC 3–8, DR 3–101(A) and DR 3–104(A), (C) & (D) as to Count III.

II. *Failure to file income tax returns and truthfully answer Client Security Commission questionnaire.* The second complaint also contained four counts. Count I alleged that respondent failed to file his federal income tax returns for the years 1980 and 1981. As of October 14, 1982, he had failed to file these returns although required to do so by 26 U.S.C. § 7203.

Count II alleged that respondent failed to file his Iowa state income tax returns for the years 1980 and 1981. As of May 11, 1983, he had not filed those returns although obligated to do so by Iowa Code section 422.25(5) (1981).

Count III alleged that respondent filed a 1982 combined statement and questionnaire with our Client Security and Attorney Disciplinary Commission which contained a false statement as to the filing of his 1980 federal and state income tax returns. The

evidence showed that on April 27, 1982, respondent filed with the Client Security Commission his statement and questionnaire wherein he certified that he had filed his 1980 federal and Iowa income tax returns. This statement was false.

The Commission found, and we agree, that respondent's conduct as to this complaint was in violation of the following: Iowa Code section 610.24(2)–(4); Iowa Court Rule 121.4(b)–(c); EC 1–1; EC 1–2; EC 1–5; EC 9–2; EC 9–6; and DR 1–102(A)(1), (3)–(6).

III. *Disposition.* Discipline is warranted. Lawler breached his professional responsibility as a lawyer in the numerous situations previously discussed.

We have stated:

The discipline mandated for a breach of professional responsibility is determined by a consideration of the respondent's fitness to continue in the practice of law, deterrence to others from similar conduct, and assurance to the public that the courts will maintain the ethics of the profession. The form and extent of a disciplinary sanction, however, must be tailored to the specific facts and circumstances of each individual case.

*Brodsky,* 318 N.W.2d at 183 (citations omitted).

In considering the appropriate discipline, we note that other evidence at the hearing showed that by order of this court filed May 16, 1981, respondent was reprimanded for unprofessional and dilatory inattention to the handling of appeals in this court.

We suspend David L. Lawler's license to practice law in the courts of this state indefinitely without reinstatement for a period of at least three years and until this court has approved a written application by respondent for reinstatement. This suspension shall apply to all facets of the practice of law. *See* Iowa Court Rule 118.-12. Any application for reinstatement shall be governed by Iowa Court Rule 118.13.

LICENSE SUSPENDED.

All Justices concur except HARRIS and McCORMICK, JJ., who take no part.