**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,**

v.

**David J. ISAACSON, Respondent.**

No. 96–2134.

Supreme Court of Iowa.

June 18, 1997.

Charles L. Harrington, Des Moines, for complainant.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, Des Moines, for respondent.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

LARSON, Justice.

This is an appeal by the board of professional ethics and conduct from a grievance commission recommendation involving the respondent, David J. Isaacson. The commission recommended a private reprimand; however, because of the seriousness of the violations, we order that the respondent's license be suspended for a minimum of six months.

This is the second appeal in this case. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866 (Iowa 1996), we held that Supreme Court Rule 118.7, which provides for issue preclusion in attorney disciplinary proceedings, was effective retroactively. We held that the rule was applicable in the disciplinary case against Isaacson, whose alleged violations occurred before the adoption of the preclusion rule. *Id.* at 871–72.

### I. *Background.*

An amendment to our court rules was adopted in January 1994 to provide for issue preclusion in attorney disciplinary cases if:

1. The issue has been resolved in a civil proceeding that resulted in a final judgment, even if the Iowa Supreme Court Board of Professional Ethics and Conduct was not a party to the prior proceedings;

2. The burden of proof in the prior proceeding was greater than a mere preponderance of the evidence; and

3. The party seeking preclusive effect has given written notice to the opposing party, not less than ten days prior to the hearing, of the party's intention to invoke issue preclusion.

Iowa Sup.Ct. R. 118.7.

The judgment for which the board seeks preclusive effect occurred in 1991. In that case, a district court, in a jury-waived trial, concluded that Isaacson had violated several rules of professional conduct and that he had committed fraud, constructive fraud, and conspiracy to defraud. The court ordered Isaacson to pay actual and punitive damages. Isaacson did not appeal.

In July 1995 this ethics complaint was filed. In the complaint, the board served notice on Isaacson that it would invoke issue preclusion based on the 1991 judgment. In the hearing before the commission, the board relied almost exclusively on the prior judgment against Isaacson to establish its claims of ethical violations. Isaacson countered with evidence that contradicted facts found by the district court in the fraud case, as well as evidence aimed at mitigating his involvement. The commission sustained the board's objections, on issue preclusion grounds, to some of the evidence presented by Isaacson. The commission, however, allowed Isaacson to make extensive offers of proof in which he gave his own version of the facts of the fraud case.

Although the commission stated that it was bound by issue preclusion to find that the ethics violations were established, it concluded that most of the alleged violations had not actually been proven by the board. The commission stated:

Isaacson is accused of four violations of the Code of Professional Responsibility for Lawyers. The Division is bound by issue preclusion to find that Isaacson violated DR 1–102(A)(4), DR 5–104(A), DR 5–105(B), and DR 5–105(C). If we find one or more violations, we must impose a sanction. *However, with the exception of responsibility for the errors concerning the preparation of the Scharnbergs' 1984 Federal and State income tax returns, the Division is not convinced that such violations occurred for the reasons set forth below.*

(Emphasis added.)

The commission gave its reasons for disagreeing with the judgment in the fraud case:

The evidence presented in the disciplinary hearing [in Isaacson's offers of proof] was markedly different in many respects from the evidence allegedly presented to the district court. Notwithstanding the findings of the district court that Isaacson's actions in connection with the four Scharnberg investments constituted fraud, misrepresentations, and conspiracy to defraud, the Division finds that Isaacson's testimony in the grievance proceedings as to his conduct concerning the transactions with the Scharnbergs is credible and truthful. The Division was unable, for example, to find the evidence of fraud, misrepresentation and conspiracy to defraud which was mentioned in the district court's opinion. *In fact, every member of the division found no wrongdoing by Isaacson. If the division were not obligated to apply the doctrine of issue preclusion in this case, we would have recommended no sanction against Isaacson.*

(Emphasis added.)

The board complains on this appeal that, under issue preclusion, the ethical violations were established by the prior civil judgment. Further, it complains that, if it had known that the commission was not in fact going to give preclusive effect to the prior judgment, the board would have produced additional evidence to support its case.

Isaacson counters that any application of issue preclusion is vulnerable on due process and fairness grounds, and moreover, his mitigating evidence shows that any sanction above a private reprimand is not warranted.

## II. *The Due Process and Fairness Arguments.*

Isaacson contends that application of issue preclusion would deny him due process, an issue he claims was raised but not resolved in the first appeal. He contends that we resolved the due process argument as a general

matter but that we did not address his specific claim that application of issue preclusion retroactively to *his* case deprived him of due process. We disagree with this reading of our opinion in the first appeal. We said:

> [W]e conclude that application of issue preclusion to the issues of fraud, misrepresentation, breach of loyalty, and conflict of interest *in the pending disciplinary case* will not violate *respondent's* procedural due process rights.

*D.J.I.*, 545 N.W.2d at 874 (emphasis added).

Isaacson's related argument that it would be unfair to apply issue preclusion in his case was also discussed at length in the first appeal and rejected. *See id.* at 872–74. We reject it now as well.

### III. *Application of Issue Preclusion.*

■ The district court in the fraud case found by clear and convincing evidence that Isaacson was guilty of misconduct in his dealings with clients named Scharnberg. Specifically, the court found that Isaacson involved the Scharnbergs in four investments, which were identified as "Cedar Ridge," the "Clive Duplex," "Execucharter," and "the Crossing." ·

Cedar Ridge and the Clive Duplex involved the Scharnbergs' purchase of property directly or indirectly from Isaacson. A portion of the Cedar Ridge project was sold to the Scharnbergs for $15,000. The Clive Duplex, owned by Isaacson and one other person, was sold to the Scharnbergs for $117,500. Execucharter was a corporation that another client of Isaacson, Griffith, had established to purchase a yacht/fishing boat. The Scharnbergs invested $29,500 in this project. The Crossing was a condominium project for which the Scharnbergs financed the construction, on Isaacson's advice.

The district court found that Isaacson made misrepresentations to the Scharnbergs and failed to disclose material facts to them. He failed to provide corrected projections of income, failed to provide information about the financial status of Griffith, misrepresented the appraisal for the Crossing, misrepresented that the Cedar Ridge investment would not require capital calls, overstated the cash flow from the Clive Duplex, and failed to disclose to the Scharnbergs that the investment that Isaacson was requesting from them was on behalf of another client, Griffith.

Isaacson "actively discouraged" the Scharnbergs from obtaining independent counsel, according to the court, and advised his clients that it would only delay matters and cause additional expense. Isaacson told his clients that he could do it more efficiently by representing both parties.

In Isaacson's first appeal, we considered the issue preclusion requirements as outlined by *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981), and by court rule 118.7. We found that the respondent's challenges to the board's claims of fraud and misrepresentation under DR 1–102(A)(4) of the code of professional responsibility and his conflict of interest under DR 5–104(A), DR 5–105(B), and DR 5–105(C) were precluded by the judgment in the fraud case because the case fit all three of the rule's requirements for application of the doctrine. *D.J.I.*, 545 N.W.2d at 875–76.

We hold that the evidence before the commission established by a convincing preponderance of the evidence that Isaacson violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 5–104(A) (entering business transaction with client without full disclosure of differing interests); DR 5–105(B) (accepting employment if exercise of independent judgment likely to be adversely affected); and DR 5–105(C) (continuing multiple employment if exercise of independent judgment likely to be adversely affected).

### IV. *Disposition.*

■ The respondent attempts to mitigate his responsibility by showing that he is an honest person, and he argues that any sanction more severe than a private reprimand would be inappropriate. He points to evidence of his character for honesty. He also produced evidence that he is a devoted father, husband, and church member and that he is highly regarded by other attorneys in the Des Moines area. He apparently has had no other disciplinary problems.

■ We consider a lawyer's general character for honesty and any previous disciplinary problems in applying sanctions. *See Committee on Prof'l Ethics & Conduct v.*

*Horn,* 526 N.W.2d 301, 302 (Iowa 1995) (prior disciplinary history); *Committee on Prof'l Ethics & Conduct v. Wenger,* 469 N.W.2d 678, 681 (Iowa 1991) (reputation for character and honesty).

Despite Isaacson's positive attributes, we view his violations of our code of professional responsibility, including fraud and failure to divulge potential conflicts of interest, as serious enough to justify a harsher response than a private reprimand. Accordingly, we order that the respondent's license be suspended indefinitely with no possibility of reinstatement for six months from the date of the filing of this opinion.

This suspension shall apply to all facets of the practice of law. Iowa Sup.Ct. R. 118.12. Upon application for reinstatement, the respondent shall have the burden of proving that he has not practiced law during the suspension and that he meets the requirements of court rule 118.13.

Costs are assessed to this respondent pursuant to court rule 118.22.

**LICENSE SUSPENDED.**